UNPUBLISHED

COURT OF APPEALS OF VIRGINIA


Present: Judges Petty, Chafin and Retired Judge Coleman[*]


SHIRLEY ROBINSON-MILES

MEMORANDUM OPINION[**]
v.      Record No. 1988-14-3      PER CURIAM
SEPTEMBER 15, 2015

DANVILLE DIVISION OF SOCIAL SERVICES


FROM THE CIRCUIT COURT OF THE CITY OF DANVILLE
James J. Reynolds, Judge

(Gregory T. Casker, on brief), for appellant. Appellant submitting
on brief.

(Alan B. Spencer; Sandra T. Chinn-Gilstrap; Guardian *ad litem* for
the minor children; Office of the City Attorney; Woods Rogers PLC,
on brief), for appellee. Appellee and Guardian *ad litem* submitting
on brief.


Shirley Robinson-Miles, mother, appeals a decision of the trial court terminating her

parental rights to seven of her minor children, pursuant to Code § 16.1-283(C)(2). On appeal,

mother contends the trial court erred in (1) finding she failed to remedy substantially the conditions

which led to or required the continued placement of the children in foster care; and (2) failing to

find she had remedied substantially the conditions which led to or required continuation of foster

care placement as it applied to any of the children individually as opposed to the children

collectively. Upon reviewing the record and briefs of the parties, we conclude this appeal is without

merit. Accordingly, we affirm the decision of the trial court.

---

[*] Retired Judge Coleman took part in the consideration of this case by designation
pursuant to Code § 17.1-400(D).

[**] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

On appeal, we view the evidence in the "'light most favorable' to the prevailing party in the circuit court and grant to that party the benefit of 'all reasonable inferences fairly deducible therefrom.'" Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 262, 616 S.E.2d 765, 767 (2005) (quoting Logan v. Fairfax Cnty. Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991)).

Mother has eight children. This appeal involves the termination of her parental rights to seven of the children- -L.T., S.T., D.T., T.T., T.R., T.B., and A.M. These children were all under the age of thirteen at the time the trial court hearing. The children were removed from mother's custody on September 7, 2011, after a police officer visited the home on a follow-up visit and found the family living in filthy and "deplorable" conditions.

At the trial court hearing, evidence was presented concerning incidents of domestic abuse involving mother and her husband. Dr. A.J. Anderson, a psychologist, evaluated mother and determined she is excessively self-focused and preoccupied with her own needs and feelings to the extent that it likely prevents her from giving adequate attention to the needs and feelings of others. Dr. Anderson also concluded that mother has narcissistic characteristics that limit her response to interventions. He opined that mother is not likely to "self-correct or be open to constructive criticism." Dr. Anderson stated that individuals diagnosed with mother's personality disorders often do not change considerably over time, even with treatment.

Katie Hall, a Danville Division of Social Services (DSS) employee, participated in over one hundred visits with mother "and various combinations of her seven children." She described the visits as "generally chaotic," and she testified that three to four additional DSS workers always participated in the visits. Hall gave several specific examples of incidents that took place during some of the visits. The examples involved mother having difficulty supervising the children or mother failing to intervene when a child was exhibiting inappropriate or potentially harmful

behavior. In one instance, mother failed to intervene when one of the children repeatedly climbed a pole despite being told by DSS workers to stop doing so. The child fell and struck his head on concrete, requiring medical attention.

Sheila Walker, a case worker with DePaul's Family Services (DFS), worked with mother since 2011. She testified DFS provided mother with reunification services, parenting instruction, budgeting assistance, nutrition services, transportation to the supervised visits with the children, and assistance in administering the visits. Walker testified mother had consistent problems with a lack of income and managing her frustrations. She also stated mother refused to participate in any academic activities with the children. Walker described instances of visitation between mother and the children that involved mother failing to properly supervise the children and failing to recognize their needs.

Melisha Carwile, a DSS foster worker, testified mother completed twelve parenting classes over an eighteen-month time period, a task that could have been completed in twelve weeks. Mother attended approximately sixteen domestic violence classes. DSS provided counseling for mother, but she attended only "sporadically." DSS scheduled a second psychological evaluation for mother in order to compare her progress since the evaluation in 2011, but mother failed to appear for the appointment.

Carwile testified DSS assisted mother with funding for utilities, food, and rent and assisted her with transportation. She stated mother has lived at six different residences since the children were removed from her care. Carwile also testified mother reported instances of domestic violence involving her husband. Mother struggles with positive parenting skills and maintaining a safe environment for the children. Carwile testified mother often does not heed advice on parenting or lifestyle changes that would assist mother, and she often requested a change in DSS employees

assigned to her case when she did not agree with the recommendations or observations of her case workers.

Evidence was presented that most of the children are receiving mental health therapy and their behaviors are improving while in foster care. In addition, some of the children had very poor dental hygiene and required dental intervention while in foster care.

Mother testified she has lived at five different residences since the removal of the children in 2011. At the time of the trial court hearing, she was residing with relatives and her eighth child. She was not employed, and she intended to apply for disability. Mother stated she was in an accident in 2012 and was unable to work at the time. Mother testified her relatives are "taking care of her," and she acknowledged she would "struggle" to financially support the seven children. The written statement of facts states mother indicated it would be "too much for her to tackle" to take the seven or eight children to a public location without assistance. Mother was not aware of the children's emotional and physical issues with the exception of one child's need for medication. She denied any incidents of abuse involving her husband, and she admitted she still associates with him. Mother testified she used "the proceeds of government assistance tuition programs" to pay rent for some of her past residences over the last thirty-three months. Mother presented evidence that she was seeking mental health counseling.

The trial court held it was in the best interests of the children to terminate mother's parental rights pursuant to Code § 16.1-283(C). On July 21, 2014, the trial court entered an order reflecting its ruling. This appeal followed.

Mother argues the trial court erred in finding she failed to remedy substantially the conditions which led to or required continued placement of the children in foster care. Mother asserts that, despite suffering from a mental condition, she cooperated with DSS and she

- 4 -

participated in the services offered by DSS, specifically attending visitation with the children and attending counseling, parenting, and domestic abuse classes.

When reviewing a decision to terminate parental rights, we presume the trial court "'thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" Toms, 46 Va. App. at 265-66, 616 S.E.2d at 769 (quoting Fields v. Dinwiddie Cnty. Dep't of Soc. Servs., 46 Va. App. 1, 7, 614 S.E.2d 656, 659 (2005)). "The trial court's judgment, 'when based on evidence heard ore tenus, will not be disturbed on appeal unless plainly wrong or without evidence to support it.'" Id. at 266, 616 S.E.2d at 769 (quoting Logan, 13 Va. App. at 128, 409 S.E.2d at 463 (citation omitted)). "In its capacity as factfinder, therefore, the circuit court retains 'broad discretion in making the decisions necessary to guard and to foster a child's best interests.'" Id. (quoting Farley v. Farley, 9 Va. App. 326, 328, 387 S.E.2d 794, 795 (1990)).

In its final order entered on July 21, 2014, the trial court made specific findings in this case. The trial court initially found mother "ignored" the best interests of the children. It also found mother's mental health condition and her inability to put the needs of the children before her own needs compromised her ability to care for the children, both individually and collectively. The trial court noted that DSS had offered mother services for years prior to the 2011 removal of the children, and mother had given "no thought to her ability to care for the children." The trial court found that since the removal, and for more than twelve months, DSS offered mother mental health services, liberal visitation with the "seven children together collectively and individually," parental guidance in learning how to safely and effectively parent the children, individually and collectively, domestic violence counseling, and referrals to other resources aimed at family reunification. The trial court found that, despite the efforts of DSS over a period of thirty-three months, mother without good cause has been unwilling or unable to make substantial progress toward the elimination of the

- 5 -

conditions which led to or required continuation of the foster care placements. The trial court also noted the extensive history of domestic violence in the family and mother's refusal to cooperate with DSS in order for DSS to determine her progress.

"The twelve-month time limit established by Code § 16.1-283(C)(2) was designed to prevent an indeterminate state of foster care 'drift' and to encourage timeliness by the courts and social services in addressing the circumstances that resulted in the foster care placement." L.G. v. Amherst Cnty. Dep't of Soc. Servs., 41 Va. App. 51, 56, 581 S.E.2d 886, 889 (2003).

> [S]ubsection C termination decisions hinge not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of the parent to make reasonable changes. Considerably more "retrospective in nature," subsection C requires the court to determine whether the parent has been unwilling or unable to remedy the problems during the period in which he has been offered rehabilitation services.

Toms, 46 Va. App. at 271, 616 S.E.2d at 772 (quoting City of Newport News Dep't of Soc. Servs. v. Winslow, 40 Va. App. 556, 562-63, 580 S.E.2d 463, 466 (2003)).

The evidence, as recited above, supports the findings of the trial court. Evidence was presented that mother showed a continued lack of ability to supervise the children and maintain a safe environment for the children. Mother attended counselling "sporadically," and she failed to appear for the second psychological follow-up evaluation. Carwile testified mother often did not heed advice on parenting or lifestyle changes that would assist her. Importantly, mother's own testimony showed she lacked an ability to financially support a total of eight children, she continued to lack stable housing, she did not understand the needs of the seven removed children, and she questioned her own ability to supervise the children in a public location without assistance.

"'[P]ast actions and relationships over a meaningful period serve as good indicators of what the future may be expected to hold.'" Linkous v. Kingery, 10 Va. App. 45, 56, 390 S.E.2d 188, 194 (1990) (quoting Frye v. Spotte, 4 Va. App. 530, 536, 359 S.E.2d 315, 319 (1987)). "It is clearly not

in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Kaywood v. Halifax Cnty. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

Based on the record, the trial court did not err in terminating mother's parental rights to the seven children pursuant to Code § 16.1-283(C)(2).

Mother also asserts the trial court erred by failing to find she remedied substantially the conditions which led to or required continuation of the foster care placements as it applied to "any of the children individually as opposed to the children collectively." She asserts the evidence "only involved situations where all seven children were present" and no evidence was presented concerning mother's visitation with fewer than seven children or in the absence of two specific children. However, a DSS worker testified mother had visitation with "various combinations of her seven children." Furthermore, the trial court's order specifically recognized mother had "liberal visitation with the seven children together collectively and individually." The trial court's order also stated mother received "guidance in learning how to safely and effectively parent the seven children, together collectively and individually." Finally, the trial court concluded "mother's mental health condition and inability to put the needs of the children before her needs compromises her ability to care for one child, individually, and all seven children, collectively[.]" Moreover, mother presented evidence in the case and the written statement of facts does not show she presented evidence addressing how she remedied substantially the conditions which led to or required continuation of the foster care placement as it applied to any of the children individually. Accordingly, mother's argument is without merit.

Based on the record, the trial court did not err in terminating mother's parental rights to her children pursuant to Code § 16.1-283(C)(2).

Affirmed.